[Cite as *Morse Rd. Dev., L.L.C. v. Centerville*, 2025-Ohio-5065.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| MORSE ROAD DEVELOPMENT LLC, ET AL. | : | C.A. No. 30358 |
| | : | |
| Appellees | : | Trial Court Case No. 2023 CV 06256 |
| | : | |
| v. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| CITY OF CENTERVILLE OHIO, ET AL. | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellants | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on November 7, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

EPLEY, P.J., and HANSEMAN, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30358

TABITHA JUSTICE, NICHOLAS E. SUBASHI, and SCOTT A. LIBERMAN, Attorneys for Appellants

DEREK L. MUNCY, JAMES H. GREER, and JAREN A. HARDESTY, Attorneys for Appellees

TUCKER, J.

{¶ 1} The City of Centerville and the Centerville City Council appeal from the trial court's reversal of the City Council's denial of a major-site-plan application filed by appellees Morse Road Development, LLC, Sheetz, Inc., and Hemmert Far Hills Properties, LLC.

{¶ 2} The City Council's site-plan denial had prevented the appellees from constructing a combination Sheetz gas station, convenience store, and restaurant on commercial property in Centerville. The trial court reversed the City Council's decision and remanded with instructions to approve the site-plan application.

{¶ 3} In five assignments of error, the City and the City Council contend the trial court erred in (1) interpreting the applicable zoning code, (2) failing to consider the City Council's full decision and the entire record, (3) finding that the City Council's decision bore no relationship to the public health, safety, and welfare of the community, (4) finding that the City Council's denial of site-plan approval was illegal, arbitrary, capricious, or unreasonable, and (5) ignoring the City Council's interpretation of its own ordinance.

{¶ 4} On January 17, 2025, the appellees moved to dismiss the present appeal, asserting that both appellants lack standing. In an order filed contemporaneously with this opinion, we sustained the motion to dismiss as to the City Council and overruled the motion as to the City itself. Therefore, the appeal will proceed with the City of Centerville as the only appellant.

2

**{¶ 5}** For the reasons set forth below, we find the City's assignments of error to be unpersuasive. Accordingly, the trial court's judgment is affirmed.

## I. Background

**{¶ 6}** Graceworks operates a large retirement community on Far Hills Avenue in Centerville. Sheetz is a corporation that owns combined gas stations, convenience stores, and restaurants. Morse Road Development is a land developer. Hemmert Far Hills Properties owns real estate located at 6318 Far Hills Avenue in Centerville. In the summer of 2022, Sheetz contracted with Hemmert to purchase the real estate, which is directly east of Graceworks' retirement community across Far Hills Avenue. Sheetz intended to raze the existing Elsa's restaurant on the property and redevelop it with a Sheetz facility.

**{¶ 7}** The property at issue sits at the southern end of a "B-2" General Business District. Centerville's applicable code, the Unified Development Ordinance ("UDO"), provides that "[t]he intent of the General Business District is to provide an appropriate location for retail, office, service and administrative establishments required to satisfy the needs of the overall community." The B-2 zoning district also is "intended to provide accommodations, supplies, sales and services to the motoring public." All of Sheetz's planned uses of the subject property were allowed under the UDO. "Permitted uses" are allowed in a zoning district "subject to the restrictions applicable to that zoning district." The code provides that a permitted use "shall be allowed as a matter of right in a zoning district."

**{¶ 8}** While Sheetz's planned uses were allowed in a B-2 zoning district, the UDO also required submission and approval of a "major site-development plan." In late 2022, the appellees submitted their plan to the Centerville Planning Commission. The proposed site plan provided for demolition of the existing building and redevelopment with a convenience

3

store, restaurant, and gas pumps. Under UDO 5.09(N)(2), the Planning Commission was required to evaluate the site plan to determine six things:

a. That it fully complies with all applicable requirements of the UDO;

b. That it fully complies with an approved Final Development Plan, if applicable;

c. That it adequately protects other property or residential uses located on the same property from the potential adverse effects of a non-residential use;

d. That it is consistent with the use and character of surrounding properties;

e. That it provides safe conditions for pedestrians or motorists and prevents the dangerous arrangement of pedestrian and vehicular ways; and

f. That it provides safe ingress and egress for emergency services.

{¶ 9} After reviewing the appellees' submission and a detailed staff report, the Planning Commission voted 5-0 to approve the site-plan application with 15 conditions. The staff report upon which the Planning Commission relied addressed each of the six criteria. Regarding the fourth consideration, that Sheetz's facility be "consistent with the use and character of surrounding properties," the staff report concluded:

> The area along Far Hills Avenue between Loop Road and North Village Drive is characterized as a heavily trafficked mixed-use corridor comprised of commercial, residential (multi-family), and institutional uses. The area north of Fireside Drive is characterized by auto-oriented uses like McDonald's, Mike's Car Wash, and a future Valvoline, along with restaurants like Jimmy John's and the former Hot Head Burritos and future Huey Magoo's. The subject property is located south of Fireside Drive, and this area's commercial uses are less auto-oriented and include residential and community-based uses.

4

Adding a Sheetz on the subject property will introduce an auto-oriented commercial use to the southern portion of the mix-use corridor; however, as shown in Exhibit O, the properties along the west side of Far Hills Avenue are all zoned B-2. The B-2 zoning district's intent and purpose is to provide "accommodations, supplies, sales, and services to the motoring public" (UDO 7.11(A)(2)).

The proposed Sheetz is consistent with the commercial uses north of Fireside Drive. To that point, the Sheetz's architecture and scale will be consistent with those same commercial uses, but less so with the institutional and residential uses to the east and south. The proposed Sheetz is less consistent with the neighboring institutional and residential uses south of Fireside Drive, but the subject property is approximately 3.7 acres and should be able to provide adequate screening so that it can coexist harmoniously with its neighbors. The proposed building footprint is 6,139 square feet and 29' 6" in height and is similar in size and scale to neighboring and nearby buildings. The fueling station canopy will be the first of its kind along this corridor within the City of Centerville but is still a permitted use in the B-2 zoning district. The subject property's size and proposed landscaping should help screen the canopy from neighboring properties. There is a new United Dairy Farmers at 5980 Far Hills Avenue (corner of East Whipp Road) that has a fueling station canopy, but this property is in Washington Township. The submitted architectural elevation drawings comply with the architectural standards set forth in UDO 9.53(C).

August 25, 2023 Planning Commission Staff Report, p. 10-11.

{¶ 10} Nearby residents and property owners filed separate appeals from the Planning Commission's decision to the Centerville City Council. The UDO authorized the City Council to review the Planning Commission's site-plan approval to determine whether it complied with the criteria in UDO 5.09(N)(2). Following a public hearing, the City Council unanimously reversed the Planning Commission's decision and denied site-plan approval. In its written decision, the City Council made the following factual findings:

1. The property in question is located at 6318 Far Hills Avenue (the "Property").

2. The Property is located at the southern end of a B-2 Commercial Zoning District in the City.

3. Immediately South of the Property is the Appellant Epiphany Church, which also runs a preschool on site and has an outdoor worship area and a memorial garden.

4. Appellant Bethany Village, residential senior retirement community, is the first property located to the West of the Property.

5. A Class One sit-down restaurant oriented to indoor dining customers, China Cottage, is the first property located to the North of the Property.

6. A residential apartment complex, the Villager Apartments, is the first property located to the East of the Property.

7. Epiphany Church, Bethany Village, China Cottage, and the Villager Apartments are the properties that surround the Property (the "Surrounding Properties").

8. The Major Site Plan Applicant intends to develop the Property as a Sheetz convenience store, with a Class Three drive thru/sit-down restaurant and a

6

fourteen-pump fueling station (a "Sheetz").

9. The Major Site Plan Applicant's representatives stated that the site would bring in approximately 3,000 distinct consumer visits daily, in addition to 12-15 gasoline delivery truck trips to the site per week.

10. Impacted streets are used for school bus stops and pedestrian traffic.

11. Major site plan applicant's proposed uses (fuel pumps, convenience store, and drive-thru/sit down restaurant) cater to the motoring public and are auto oriented uses.

12. The Sheetz would operate 24 hours a day, 7 days a week ("24/7").

13. None of the Surrounding Properties, and no property within the City along State Route 48 from Interstate 675 to Whipp Road actively operate and are open to the public on a 24/7 basis.

{¶ 11} After reciting its factual findings, the City Council referenced the site-plan approval criteria in UDO 5.09(N)(2), focusing exclusively on the need for a proposed use to be "consistent with the use and character of surrounding properties." As relevant here, the City Council found as follows in its conclusions of law:

2. The Major Site Plan Application is not consistent with the use and character of the surrounding properties as required under UDO Article 5.09(N)(2)(d) as reflected in the presentations (including statements, exhibits, and arguments and other submissions) of Staff, the Appellants, the Applicant, and persons offering public comment. These inconsistencies include, but are not limited to, the 24/7 operation of the Sheetz on the Property, and the use being the only auto oriented use south of Fireside Drive; such uses being in contrast to the primarily institutional, residential, and Class One indoor sit-

7

down restaurant uses of the four (4) Surrounding Properties.

3. In reaching conclusion No. 2 above, Council concludes that the 24/7 operation of the Sheetz, by itself and not in combination with any other aspect of the Major Site Plan Application, is sufficient to render the application inconsistent with the use and character of the Surrounding Properties.

{¶ 12} The City Council voted 7-0 to reverse the Planning Commission's approval of Sheetz's site-plan application. The City Council denied the application on the grounds that the proposed development was "not consistent with the use and character of surrounding properties," as required under UDO 5.09(N)(2)(d).

{¶ 13} Morse Road Development, Sheetz, and Hemmert appealed from the City Council's decision to the trial court under R.C. Chapter 2506. Upon review, the trial court rejected the City Council's definition of "surrounding properties" to mean only the four properties adjacent to the subject property. The trial court defined "surrounding properties" more broadly "to include not only the properties that are adjacent to the Property on all sides but also the properties along State Route 48 between Interstate 675 and Whipp Road."

{¶ 14} After defining the relevant area, the trial court held that the City Council could not rely on Sheetz's intended 24/7 operation to find the proposed use inconsistent with the use and character of surrounding properties. The trial court noted that Centerville's code did not prohibit businesses in a B-2 District from operating 24/7. It also cited case law for the proposition that land-use restrictions cannot be extended to include limitations not found in an ordinance. Therefore, the trial court reasoned that the City Council's decision unlawfully placed a new hours-of-operation limitation on Sheetz's proposed facility.

{¶ 15} The trial court next examined the City's Council's other justification for denying site-plan approval, namely Sheetz's status as the only "auto-oriented use" south of Fireside

8

Drive. The trial court observed that the phrase "auto-oriented use" was coined by the Planning Commission and relied on by the City Council but not defined in the UDO. The trial court noted, however, that the UDO did define "Automobile Dependent Uses or Activities" as "land uses that contain automobiles and/or motor vehicles as integral parts of the uses." The trial court applied this definition to the Planning Commission's and the City Council's reference to "auto-oriented use." In so doing, the trial court rejected the City's argument that an "auto-oriented use" is limited to "a business with a drive-through service or services for motor vehicles such as gas stations, car washes, or repair shops, i.e., places that provide service directly to the automobile or to the occupants of automobiles." Under either definition, however, the trial court found that the surrounding properties included auto-oriented uses such as a car wash, an oil-change business, and one or more car dealerships. The trial court also found that "the record does not support the City Council's contention that the proposed Sheetz would be the only auto-oriented use south of Fireside Drive."

{¶ 16} Finally, the trial court rejected Graceworks' argument that the City Council should have denied site-plan approval for failure to comply with additional criteria in UDO 5.09(N)(2), including the appellees' failure to protect other property from a non-residential use, failure to address traffic issues, and failure to provide safe ingress and egress for first responders to access Graceworks' campus. The trial court noted that neither the Planning Commission nor the City Council had found that the site-plan application failed to meet these requirements. The trial court also characterized the concerns as speculative and unsupported by the evidence.

{¶ 17} Based on its analysis, the trial court declared the City Council's reversal of the Planning Commission to be "unconstitutional, illegal, arbitrary, capricious, unreasonable, and/or unsupported by the preponderance of the substantial, reliable, and probative

9

evidence, as the City Council exceeded its authority as a quasi-judicial body by improperly taking legislative action in reversing the Planning Commission's approval of Appellants' MSP." The trial court concluded that the "City Council's reversal imposed a condition on Appellants' use of the Property that is not contained in the UDO." The trial court also determined that "there is no evidence in the record that the City Council's decision restricting Appellants' use of the Property bore a substantial relationship to public health, safety, or welfare." As a result, the trial court reversed the City Council's decision denying site-plan approval and remanded the case with instructions to approve the site plan subject to the 15 conditions originally imposed by the Planning Commission. The City of Centerville and the Centerville City Council timely appealed.[1] As noted above, we have dismissed the appeal as to the City Council, while allowing the appeal by the City itself to proceed.

## II. Analysis

{¶ 18} The City's first assignment of error states:

**The Trial Court Erred as a Matter of Law in Its Interpretation of the Local Ordinance.**

{¶ 19} The City contends the trial court erred in finding that the City Council could not consider Sheetz's proposed 24/7 operation when evaluating whether the proposed facility was consistent with the use and character of surrounding properties. Although the UDO does not prohibit businesses in a B-2 zoning district from operating 24/7, the City contends Sheetz's planned hours of operation remained a relevant consideration when assessing consistency with the surrounding area. The City argues as follows:

---

[1] Graceworks appealed from the trial court's decision under a different appellate case number. We previously overruled a motion to consolidate the two appeals. The appeal by Graceworks was resolved in the separate opinion filed today in *Morse Road Development, LLC, et al. v. City of Centerville, Ohio, et al.*, Montgomery App. No. CA 30387.

Under the terms of Centerville's UDO, City Council was statutorily obligated to consider the use and characteristics of the properties surrounding the proposed business. There was no dispute that the applicant was proposing to operate a business 24 hours a day despite being surrounded on three sides by residential uses. There was no dispute that no business to the north of the site operated on a 24/7 basis when the [major site plan] application was submitted. At no point did the applicant propose amending its application to eliminate the 24-hour operation proposal. As such, the City properly considered this as one of the reasons for denying the [major site plan application].

Appellant's Br., p. 23-24.

{¶ 20} In a separate opinion filed today resolving the companion appeal by Graceworks, we addressed the same argument and found no basis for reversal. We held that the relevant "surrounding properties" included all properties within a 500-foot radius of Sheetz's proposed facility. Regarding Sheetz's planned 24/7 operation, we held that the City Council was entitled to consider that fact when assessing consistency with the use and character of surrounding properties. We also concluded, however, that Sheetz's intended 24/7 operation did not make its facility inconsistent with surrounding properties as a matter of law. We held that a contrary conclusion would be so at odds with the evidence as to be erroneous as a matter of law and, therefore, an abuse of discretion. The City's first assignment of error is overruled on the authority of our opinion affirming the trial court's judgment in the companion appeal filed by Graceworks, *Morse Road Development, LLC, et al. v. City of Centerville, Ohio, et al.*, Montgomery App. No. CA 30387.

11

**{¶ 21}** The second assignment of error states:

**The Trial Court Abused Its Discretion when It Failed to Consider the Full Decision and the Entire Record.**

**{¶ 22}** The City claims the trial court improperly focused on only two ways that the City Council found Sheetz's proposed facility to be inconsistent with the use and character of surrounding properties. As noted above, the trial court specifically considered whether Sheetz's planned 24/7 operation and its status as an auto-oriented use made it inconsistent with the surrounding area. The City maintains that the trial court ignored the broader record and "failed to consider the many other ways in which the proposed development was inconsistent with the use and character of the surrounding properties."

**{¶ 23}** Upon review, we find the City's argument to be unpersuasive. Nothing in the trial court's relatively lengthy opinion suggests that it failed to consider the entire record, including Sheetz's site-plan application, the UDO, the Planning Commission's decision, evidence presented to the City Council, the City Council's decision, and the parties' briefs. The trial court's opinion referenced objections raised by Sheetz's opponents at the City Council hearing and included several citations to a transcript of the hearing. The trial court also quoted extensively from the UDO and from the City Council's decision.

**{¶ 24}** Regarding the trial court's focus on two perceived inconsistencies with surrounding properties, namely Sheetz's proposed hours of operation and its status as an auto-oriented use, the City and the City Council did likewise. In reversing the Planning Commission's unanimous site-plan approval, the City Council reasoned:

The Major Site Plan Application is not consistent with the use and character of the surrounding properties as required under UDO Article 5.09(N)(2)(d) as reflected in the presentations (including statements, exhibits, and arguments

12

and other submissions) of Staff, the Appellants, the Applicant, and persons offering public comment. *These inconsistencies include, but are not limited to, the 24/7 operation of the Sheetz on the Property, and the use being the only auto oriented use south of Fireside Drive*; such uses being in contrast to the primarily institutional, residential, and Class One indoor sit-down restaurant uses of the four (4) Surrounding Properties.

(Emphasis added.)

{¶ 25} Although the City Council apparently found other unspecified inconsistencies, the only two it identified and explicitly relied on were Sheetz's intended 24/7 operation and its status as an auto-oriented use south of Fireside Drive. In their appeal to the trial court, Morse Road Development, Sheetz, and Hemmert addressed those issues. For its part, the City also focused on Sheetz's hours of operation and auto-oriented use. The trial court then addressed the issues as the City Council and the parties had framed them, specifically considering whether Sheetz's planned 24/7 operation or its status as an auto-oriented use made it inconsistent with the surrounding area.

{¶ 26} As for the City Council's catch-all "not limited to" reference to other unnamed inconsistencies, the trial court had little ability and no obligation to address them. On appeal, the City suggests that the other unspecified inconsistencies included Sheetz's proposed business attracting 3,000 customers per day and requiring 12 to 15 gasoline delivery trucks per week, as well as the impact of this activity on vehicular traffic and pedestrians. We note, however, that these facts were related to Sheetz's intended 24/7 operation and its status as an auto-oriented use, which are issues that the City Council and the trial court did address. Moreover, the impact of Sheetz's proposed facility on vehicular traffic and pedestrians more appropriately fell under UDO 5.09(N)(2)(e), which required evaluation of Sheetz's site-plan

13

application to determine whether "it provide[d] safe conditions for pedestrians or motorists and prevent[ed] the dangerous arrangement of pedestrian and vehicular ways." In reversing the Planning Commission's approval, the City Council notably made no finding of non-compliance with UDO 5.09(N)(2)(e). For the foregoing reasons, we overrule the City's second assignment of error.

{¶ 27} The third assignment of error states:

**The trial court erred when it found that City Council's decision bore no relationship to the public health, safety, or welfare of the community.**

{¶ 28} The City challenges the trial court's finding that the City Council's denial of site-plan approval was not based on "any concerns regarding the health, safety, morals or general welfare of the community surrounding the Property." The City infers that the trial court made this statement to support a finding that the City Council acted unconstitutionally when it denied Sheetz's site-plan application. The City insists that all site-plan approval criteria in UDO 5.09(N)(2) are related to the health, safety, and welfare of the community. Consequently, the City asserts that City Council's denial of site-plan approval under UDO 5.09(N)(2)(d) necessarily bore a substantial relationship to the public health, safety, and welfare of the community, meaning that the City Council's decision was constitutional.

{¶ 29} Upon review, we find the third assignment of error to be without merit. The trial court made the challenged finding when addressing citizens' complaints at the City Council hearing. It noted that opponents of Sheetz's application had voiced concerns "such as crime, traffic congestion, light pollution and environmental hazards." The trial court discounted these issues, stating that the City Council "did not reverse the Planning Commission's approval of Appellant's MSP based on any concerns regarding the health, safety, morals or general welfare of the community surrounding the Property." In other words, the trial court

14

simply pointed out that the City Council based its ruling on Sheetz's planned 24/7 operation and auto-oriented use as opposed to other issues.

{¶ 30} Regardless, even if the City Council's denial of site-plan approval was constitutional, we see no basis for reversal. The City Council denied Sheetz's application based on a finding that the planned development was not consistent with the use and character of surrounding properties under UDO 5.09(N)(2)(d). In today's separate opinion resolving Graceworks' appeal, we rejected this finding. We recognized that the uncontroverted facts and evidence established, as a matter of law, that Sheetz's facility was consistent with the use and character of surrounding properties. Setting aside any possible constitutional infirmity, the City Council's decision was unreasonable and unsupported by the preponderance of the evidence as a matter of law. Therefore, the trial court did not err in reversing the City Council's denial of Sheetz's site-plan application. The third assignment of error is overruled.

{¶ 31} The fourth assignment of error states:

**The trial court erred in finding that Centerville's action was illegal, arbitrary, capricious, or unreasonable.**

{¶ 32} In addition to declaring the City Council's decision unconstitutional, the trial court held that reversal of the Planning Commission's site-plan approval was "illegal, arbitrary, capricious, unreasonable, and/or unsupported by the preponderance of substantial, reliable and probative evidence." The City challenges these determinations. It argues that the City Council's decision was supported by a sound reasoning process, grounded in undisputed evidence and testimony, and based on accurate findings of fact and conclusions of law.

15

**{¶ 33}** Once again, we reject the City's argument on the authority of our opinion filed today in *Morse Road Development, LLC, et al. v. City of Centerville, Ohio, et al*., Montgomery App. No. CA 30387. In resolving Graceworks' related appeal, we concluded that the City Council had applied an unduly restrictive definition of "surrounding properties." We also held that the City Council unreasonably had found Sheetz's planned 24/7 operation to be inconsistent with the use and character of surrounding properties. We characterized the City Council's attempt to distinguish Sheetz from the surrounding properties as arbitrary in some respects and held that its denial of site-plan approval was unsupported by the preponderance of substantial, reliable, and probative evidence as a matter of law. Based on those determinations, we overrule the City's fourth assignment of error.

**{¶ 34}** The fifth assignment of error states:

**The Trial Court Erred as a Matter of Law When it Ignored Centerville's Interpretation of Its Own Ordinance.**

**{¶ 35}** The City contends the trial court erred in rejecting the City Council's definition of "surrounding properties" and "auto-oriented use." We fully addressed this argument in our opinion disposing of Graceworks' appeal. We concluded that the City Council improperly had defined "surrounding properties" to mean "adjacent properties." Even if the City Council's interpretation of the UDO were entitled to some deference, as the City argues, interpreting "surrounding" to mean "adjacent" was unreasonable. In resolving Graceworks' appeal, we held that "surrounding properties" in UDO 5.09(N)(2)(d) meant all properties within a 500-foot radius of Sheetz's proposed facility. Regarding the meaning of "auto-oriented use," we held that even applying the City Council's definition, several other businesses in the relevant area qualified as auto-oriented uses. Accordingly, the fifth assignment of error is overruled.

16

### III. Conclusion

**{¶ 36}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J., and HANSEMAN, J., concur.